UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY CAPITAL I TRUST 2016-UBS11, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2016-UBS11, acting by and through CWCapital Asset Management LLC as Special Servicer under the Pooling and Servicing Agreement dated as of August 1, 2016,<br><br>Plaintiff,<br><br>-against-<br><br>FPP ASSOCIATES, LLC,<br><br>Defendant. | CIVIL ACTION FILE NO.<br>**20-mc-0013** |

## COMPLAINT

Plaintiff Wells Fargo Bank, National Association, as Trustee for Morgan Stanley

Capital I Trust 2016-UBS11, Commercial Mortgage Pass-Through Certificates, Series 2016-

UBS11 ("*Plaintiff*") acting by and through CWCapital Asset Management LLC as Special

Servicer ("*Special Servicer*") under the Pooling and Servicing Agreement dated as of August 1,

2016, states its complaint as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Wells Fargo Bank, National Association ("*Wells Fargo*"), acting solely in

its capacity as trustee of Plaintiff, is a national banking association with its designated main

office located in Sioux Falls, South Dakota.

2.      Wells Fargo is the duly appointed and presently serving Trustee under the

trust created under that certain Pooling and Servicing Agreement (the "*PSA*") dated as of August

1, 2016.

US2008 16186830 6

3. Wells Fargo, not individually, but solely in its capacity as Trustee under the PSA, acting by and through the Special Servicer, brings this action as Plaintiff with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth.

4. Defendant FPP Associates, LLC ("*Defendant*") is a Delaware limited liability company that maintains its principal place of business located at 4929 Wilshire Blvd., Suite 910, Los Angeles, California 90010.

5. Because Defendant is a limited liability company, Defendant's citizenship is determined by the citizenship of its members. Based on the citizenship of the following entities and individuals with direct and indirect and indirect membership interests in Defendant, Defendant is a citizen of California, Florida, New York and Tennessee. The sole member of Defendant, MWFD, LLC ("*Defendant's Sole Member*"), is a Delaware limited liability company that maintains its principal place of business located at 4929 Wilshire Blvd., Suite 910, Los Angeles, California 90010. The members of Defendant's Sole Member are as follows:

> (i) Kevin J. Nevala, as trustee of the Kevin John Nevala Separate Property Trust U/A 10/23/2003. Upon information and belief, Kevin J. Nevala is an individual resident and citizen of California.

> (ii) FirstChoice Property & Development, LLC d/b/a "FirstChoice Property & Development," a Tennessee limited liability company that maintains its principal place of business located at 219 US Highway 45 West, Humboldt, Tennessee 38343. Upon information and belief, the members of FirstChoice Property & Development, LLC are Flint Cox and Greg Kelley who are residents and citizens of Tennessee.

> (iii) Yalde Investments, LLC, a California limited liability company that maintains its principal place of business located at 6222 Wilshire Boulevard, Suite

US2008 161868306

220, Los Angeles, California 90048. Upon information and belief, the members of Yalde Investments, LLC are Elizabeth Renee Rubin and Daniel Rubin who are residents and citizens of California.

(iv)     Jacob Gofman, as trustee of the Jacob and Nancy Gofman Living Trust U/T/A 09/13/2005. Upon information and belief, Jacob Gofman is an individual resident and citizen of California.

(v)      Mark Mandelbaum. Upon information and belief, Mark Mandelbaum is an individual resident and citizen of California.

(vi)     Stephen Werdiger and Jonah Blumenfrucht, as trustees of the Solomon Werdiger 2014 Irrevocable Trust.   Upon information and belief, Stephen Werdiger and Jonah Blumenfrucht are individual residents and citizens of New York.

(vii)    Russell Allen Anderson and Susan Irene Showers Anderson, as trustees of the Anderson Family Trust.   Upon information and belief, Russell Allen Anderson and Irene Showers Anderson are individual residents and citizens of California.

(viii)   Joseph Kahan and Frieda Kahan, as trustees of The Joseph and Frieda Kahan Family Trust dated 10/18/95. Upon information and belief, Joseph Kahan and Frieda Kahan are individual residents and citizens of California.

(ix)     825 Westbourne Drive, LLC, a California limited liability company that maintains its principal place of business located at 10618 West Pico Boulevard, Los Angeles, California 90064. Upon information and belief, the members of 825 Westbourne Drive, LLC are Frieda Kahan and Esther Miller who are residents and citizens of California.

-3-

    (x) Pesach and Esther Chayn. Upon information and belief, Pesach and Esther Chayn are individual residents and citizens of California.

    (xi) Sussman Rubin. Upon information and belief, Sussman Rubin is an individual resident and citizen of California.

    (xii) Michael Rackman. Upon information and belief, Michael Rackman is an individual resident and citizen of Florida.

    6. Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because it is between citizenship of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

    7. Defendant owns eight separate parcels of real property and improvements in four states, each formerly operated as a Fred's Super Dollar store, and located at the following addresses:

    (i) 4629 West Main Street, Soperton, Treutlen County, Georgia 30457;

    (ii) 403 Front Street South, Richton, Perry County, Mississippi 39476;

    (iii) 400 West McKinley Avenue, Haughton, Bossier Parish, Louisiana 71037;

    (iv) 400 Washington Avenue, Mansfield, DeSoto Parish, Louisiana 71052;

    (v) 1320 Highway 2, Sterlington, Ouachita Parish, Louisiana 71280;

    (vi) 9270 Highway 79, Haynesville, Claiborne Parish, Louisiana 71038;

    (vii) 2866 Bienville Road, Ringgold, Bienville Parish, Louisiana 71068 and

    (viii) 1311 N. Charlyne Street, Brinkley, Monroe County, Arkansas 72021 (collectively, the "*Stores*" or "*Properties*").

    8. Pursuant to Section 10.6(b) of the Loan Agreement (as defined in paragraph 11 of this Complaint), Defendant may be served with process through its authorized agent under the Loan Agreement, Erik J. Wiesel, Esq. at 50 Merrick Road, Rockville Centre,

-4-

New York 11570. Alternatively, Defendant may be served with process through its Georgia registered agent, CORP2000, Inc., 9000 Old Roswell Lakes Parkway, Suite 310, Roswell (Fulton County), Georgia, 30076.

        9.      This dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Therefore, this Court has diversity-of-citizenship jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

        10.     Pursuant to Section 10.6(b) of the Loan Agreement, the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract: "[a]ny legal suit[], action or proceeding against [Plaintiff] or [Defendant] arising out of or relating to [the Loan Agreement] shall be instituted in any federal or state court in New York County, New York." Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3). See, e.g., Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 393 (S.D.N.Y. 2006) (concluding that defendant "has made itself subject to the personal jurisdiction of the Court by virtue of the forum-selection clause. Therefore, by operation of § 1391, venue is proper.")

## FACTUAL BACKGROUND

### A.    The Loan.

        11.     By Loan Agreement dated as of April 11, 2016 (the "*Loan Agreement*"), Natixis Real Estate Capital LLC, a Delaware limited liability company ("*Natixis*"), Plaintiff's predecessor-in-interest, agreed to make a loan to Defendant in the original principal amount of $10,120,600.00 (the "*Loan*").

        12.     As evidence of the Loan, Defendant, inter alia, executed and delivered to Natixis a Promissory Note dated April 11, 2016 in the original principal amount of $10,120,600.00 (the "*Note*").

13.  Pursuant to the terms of the Note, Defendant, inter alia, agreed to pay to the order of Natixis the principal sum of $10,120,600.00 plus interest thereon in monthly installments at the rates set forth therein commencing on June 5, 2016 and continuing through the maturity date of May 5, 2026 (the "*Maturity Date*") at which time all amounts due under the Note and related loan documents became immediately due and payable.

**B.  The Collateral Security.**

14.  As collateral security for the payment of the Note, Defendant, inter alia, executed, acknowledged and delivered to Natixis eight security instruments pursuant to which Defendant, inter alia, granted Natixis a security interest in each of the eight Properties, respectively (collectively, referred to as the "*Security Instruments*").  Specifically,

(a)  by Deed To Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of April 11, 2016 executed, acknowledged and delivered by Defendant to Natixis (the "*Soperton Security Deed*"), Defendant, inter alia, granted to Natixis, security title to property located in Treutlen County, Georgia with an address of 4629 West Main Street, Soperton, Georgia 30457, as is more particularly described in Exhibit 1 attached hereto;

(b)  by Deed of Trust, Assignment of Leases and Rents and Security Agreement made as of April 11, 2016 executed, acknowledged and delivered by Defendant to Natixis (the "*Richton Deed of Trust*"), Defendant, inter alia, pledged to the trustee identified therein for the benefit of Natixis, property located in Perry County, Mississippi with an address of 403 Front Street South, Richton, Mississippi 39476, as is more particularly described in Exhibit 2 attached hereto;

(c)  by Mortgage, Pledge of Leases and Rents and Security Agreement dated as of April 11, 2016, executed, acknowledged and delivered by Defendant to Natixis (the "*Haughton Mortgage*"), Defendant, inter alia, granted to Natixis a mortgage lien on property located in Bossier Parish, Louisiana with an address of 400 West McKinley Avenue, Haughton, Louisiana 71037, as is more particularly described in Exhibit 3 attached hereto;

(d)  by Mortgage, Pledge of Leases and Rents and Security Agreement dated as of April 11, 2016 executed, acknowledged and delivered by Defendant to Natixis (the "*Mansfield Mortgage*"), Defendant, inter alia, granted to Natixis a mortgage lien on property located in DeSoto Parish, Louisiana with an address of 400 Washington Avenue, Mansfield,

-6-

Louisiana 71052, as is more particularly described in Exhibit 4 attached hereto;

(e)      by Mortgage, Pledge of Leases and Rents and Security Agreement dated as of April 11, 2016 executed, acknowledged and delivered by Defendant to Natixis (the "*Sterlington Mortgage*"), Defendant, inter alia, granted to Natixis a mortgage lien on property located in Ouachita Parish, Louisiana with an address of 1320 Highway 2, Sterlington, Louisiana 71280, as is more particularly described in Exhibit 5 attached hereto;

(f)      by Mortgage, Pledge of Leases and Rents and Security Agreement dated as of April 11, 2016 executed, acknowledged and delivered by Defendant to Natixis (the "*Haynesville Mortgage*"), Defendant, inter alia, granted to Natixis a mortgage lien on property located in Claiborne Parish, Louisiana with an address of 9270 Highway 79, Haynesville, Louisiana 71038, as is more particularly described in Exhibit 6 attached hereto;

(g)      by Mortgage, Pledge of Leases and Rents and Security Agreement dated as of April 11, 2016 executed, acknowledged and delivered by Defendant to Natixis (the "*Ringgold Mortgage*"), Defendant, inter alia, granted to Natixis a mortgage lien on property located in Bienville Parish, Louisiana with an address of 2866 Bienville Road, Ringgold, Louisiana 71068, as is more particularly described in Exhibit 7 attached hereto; and

(h)      by Mortgage, Assignment of Leases and Rents and Security Agreement made as of April 11, 2016 executed, acknowledged and delivered by Defendant to Natixis (the "*Brinkley Mortgage*"), Defendant, inter alia, granted to Natixis a mortgage lien on property located in Monroe County, Arkansas with an address of 1311 N. Charlyne Street, Brinkley, Arkansas 72021, as is more particularly described in Exhibit 8 attached hereto.

15.      Additionally, pursuant to the terms of the Loan Agreement, as collateral

security for the payment of the Loan, Defendant, inter alia, granted Natixis a security interest in

all Rents (as that terms is defined in the Loan Agreement) generated from each of the Properties.

Specifically, Section 3.9 of the Loan Agreement provides, in relevant part:

**3.9  Grant of Security Interest; Application of Funds.**  As security for payment of the Debt and the performance by Borrower of all other terms, conditions and provisions of the Loan Documents, Borrower hereby pledges and assigns to Lender, and grants to Lender a security interest in, all of Borrower's right, title and interest in and to all Rents and in and to all payments to or monies held in the Clearing Account, the Deposit Account and all Subaccounts created pursuant to this Agreement (collectively, the "*Cash Management Accounts*"). Borrower hereby grants to

-7-

> Lender a continuing security interest in, and agrees to hold in trust
> for the benefit of Lender, all Rents in its possession prior to the (i)
> payment of such Rents to Lender or (ii) deposit of such Rents into
> the Deposit Account. Borrower shall not, without obtaining the
> prior written consent of Lender, further pledge, assign or grant any
> security interest in any Cash Management Account, or permit any
> Lien to attach thereto, or any levy to be made thereon, or any UCC
> Financing Statements, except those naming Lender as the secured
> party, to be filed with respect thereto. This Agreement is, among
> other things, intended by the parties to be a security agreement for
> purposes of the UCC. …

16.     Consistent with the terms of the Loan Agreement, Defendant executed and

delivered to Natixis an Assignment of Leases and Rents or Assignment and Pledge of Leases and

Rents, each dated April 11, 2016 (individually or collectively, the "*AL&R*") for each of the

Properties pursuant to which Defendant, inter alia, assigned to Natixis all Leases and Rents (each

as defined in the Loan Agreement). An example of the language that is identical or nearly

identical in each AL&R is as follows:

> (a)     As part of the consideration for the Debt, Borrower does
> hereby absolutely and unconditionally assign to Lender all right,
> title and interest of Borrower in and to all present and future
> Leases and Rents, and this Assignment constitutes a present and
> absolute assignment and is intended to be unconditional and not as
> an assignment for additional security only. It is further intended
> that it not be necessary for Lender to institute legal proceedings,
> absent any requirements of law or regulation to the contrary, to
> enforce the provisions hereof. Borrower hereby authorizes Lender
> or its agents to collect the Rents; provided, however, that prior to
> an Event of Default or the commencement of a Cash Management
> Period, and subject at all times to the requirement that payments
> and deposits of Rents be made directly to the Clearing Account,
> Borrower shall have a revocable license, but limited as provided in
> this Assignment and in any of the other Loan Documents, to
> otherwise deal with, and enjoy the rights of the lessor under, the
> Leases.

## C.     Assignment of Loan Documents.

17.     By assignments dated August 25, 2016, Natixis assigned to Plaintiff as

trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-Through

Certificates, Series 2016-UBS11 (the "*Trust*"), all of its right, title and interest in and to the

-8-

Security Instruments, the AL&R, the Loan Agreement and the other Loan Documents (the "*Plaintiff Assignments*").

18.     In connection with the Plaintiff Assignments, Natixis delivered to Plaintiff an Allonge ("*Plaintiff Allonge*") by which Natixis directed all payments under the Note be made to the order of Wells Fargo, as Trustee for the Trust.

**D.      The Default.**

19.     An Event of Default has occurred under the Loan Documents based on, inter alia, Defendant's failure to pay to Plaintiff all of the amounts due and owing on the Payment Date (as defined in the Loan Agreement) for each of July 2019, August 2019, September 2019, October 2019 and November 2019 (the "*Default*"). Specifically, Section 8.1 of the Loan Agreement provides, in relevant part, as follows: "An "Event of Default" shall exist with respect to the Loan if . . . (a) any portion of the Debt is not paid when due . . . ."

20.     As a result, by letter dated September 9, 2019, Plaintiff notified Defendant of its Default under the Loan Documents and demanded that such Default be immediately cured.

21.     As of the date of this complaint, Defendant has failed to cure the Default despite demand. As a result, there is now due and owing to Plaintiff, an unpaid principal balance in excess of $9,697,487.53 plus accrued and paid interest at the rates set forth in the Note, together with such other amounts due and owing under the Loan Documents, including, without limitation, Plaintiff's reasonable attorneys' fees and costs.

**E.      Plaintiff's Remedies Under the Loan Documents.**

22.     Pursuant to the express terms of the Loan Documents, Defendant has consented to the appointment of a receiver following its Default. An example of the language contained in the Security Instruments[1] is as follows:

---

[1]   Identical or nearly identical language can be found in each of the Security Instruments identified in paragraph 14.

US2008 16186830 6

**10.    Remedies.**

(a)    Upon the occurrence of any Event of Default, Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, by Lender itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

. . .

(v)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in any other Loan Document;

. . .

(vii)    apply for the appointment of a trustee, receiver, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Borrower or of any person, firm or other entity liable for the payment of the Debt;

23.    In turn, the AL&R provides at paragraph 2(b) as follows:

Upon the occurrence and during the continuance of an Event of Default or the commencement of a Cash Management Period, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by court-appointed receiver, the license referred to in Subsection (a) above shall immediately be revoked and Lender shall have the right at its option, to exercise all rights and remedies contained in the Loan Documents, or otherwise available at law or in equity.

24.    The Stores, the Leases, the Rents, the books, records and other property

relating to the ownership and operation of the Stores (collectively, the "***Defendant's Assets***") are

the sole assets of Defendant.

25.    Except for certain limited qualifications as set forth in the Loan

Documents, Defendant has no personal liability for repayment of the Loan, and Plaintiff's sole

recourse for repayment of the Loan is the collateral securing the Loan, including the Stores and

the Rents.

-10-

26.     Each of the eight Stores is currently empty and without local property management or security in place to protect and preserve it. Additionally, at least one of the buildings has been damaged by trees felled by high winds in a recent storm.

27.     Upon information and belief, Plaintiff's insurance company has indicated the insurance coverage for each of the eight Stores will be terminated since the Properties are now empty.

28.     There is manifest danger of loss, deterioration and diminution of the Stores which, along with the Rents, are the primary sources for repayment of the Loan, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has a no adequate remedy at law against Defendant.

29.     Plaintiff is contractually and equitably entitled to the appointment immediately of a receiver to take possession of and hold, subject to the discretion of this Court, the Stores, the Leases, the Rents and the other Defendant's Assets.

## COUNT I
## (Breach of Contract)

30.     Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 29 of this Complaint.

31.     Plaintiff and Defendant are parties to the Loan Documents regarding the financing provided to Defendant.

32.     Defendant failed to pay its indebtedness to Plaintiff in accordance with the terms of the Loan Documents.

33.     Defendant's failure to pay such indebtedness constitutes a breach of the Note and the other Loan Documents.

34.     As the proximate result of Defendant's breach, Events of Default have occurred under the Loan Documents and Plaintiff is contractually entitled to exercise its

-11-

remedies under the Loan Documents which includes applying for the appointment of a receiver for the Defendant's Assets.

## COUNT II
### (Appointment of a Receiver)

35.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 34 of this Complaint.

36.     Defendant's Assets are the sole assets of Defendant.

37.     Except for certain limited qualifications as set forth in the Loan Documents, Defendant has no personal liability for repayment of the Loan, and Plaintiff's sole recourse for repayment of the Loan is the collateral securing the Loan, including the Stores.

38.     Defendant has failed to pay to Plaintiff all amounts due under the Loan Documents as and when due.

39.     The Loan Documents expressly allow Plaintiff to seek, and Defendant consented to, the appointment of a receiver upon the occurrence of an Event of Default.

40.     Defendant and its agents are still in possession of Defendant's Assets, including the Stores.

41.     The Stores are currently empty and without local property management or security in place to protect and preserve them.

42.     Defendant's insurance company has indicated the insurance coverage for each of the eight Stores will be terminated since the Properties are now empty.

43.     Plaintiff, as an interested and secured party, is threatened with material losses and injuries, including the Defendant's Assets suffering continuing waste and a dissipation or diminution in value, if Defendant remains in control of Defendant's Assets, including the Stores.

-12-

44. Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Stores, the Leases, the Rents and the other Defendant's Assets.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. That the Court grant Plaintiff the relief it seeks on all counts;

B. That the Court appoint a receiver to take possession of, control and hold the Defendant's Assets, including the Stores, the Leases and the Rents;

C. That Defendant and its agents charged with operating and/or managing the Stores promptly render an accounting for all Rents and other income from the Stores and all other revenue from Defendant's Assets received by Defendant from and after July 5, 2019, and provide all such information and reports concerning the ownership, use, operation, management, repair, maintenance and leasing of the Stores and the other Defendant's Assets as may be required by this Court to provide the receiver appointed by this Court with the information necessary to perform its obligations as receiver of the Stores and the other Defendant's Assets;

D. That the receiver appointed by this Court shall segregate, preserve, protect, collect and account for, and manage, operate, lease, maintain and preserve, the Defendant's Assets, including the Stores, the Leases and the Rents;

E. That Defendant promptly pay over to the receiver and cause Defendant's affiliates and the management companies currently managing the Stores to promptly pay over to the receiver (1) all deposits, Rents, revenues and other income from the Stores and all other funds which are a part of Defendant's Assets which are currently in Defendant's or its agents' possession or control; and (2) all such deposits, Rents, revenue and other income from the Stores

-13-

and other funds which are a part of Defendant's Assets which are received by any of them from and after the appointment of the receiver;

F.      That the receiver pay to Plaintiff on a monthly basis any income and revenue from the Stores in excess of that amount reasonably required to manage, operate, lease, maintain and preserve the Stores and the other Defendant's Assets;

G.      That Plaintiff be permitted, at its sole election, and be authorized to make such advances to the receiver for the benefit and account of Defendant under the Loan Documents as may be necessary from time to time, in the exercise of Plaintiff's sole discretion, and as provided under the Loan Documents, to pay costs and expenses reasonably required to manage, operate, lease, maintain and preserve the Stores to the extent that Rents, income and other revenue from Defendant's Assets, including the Stores, are insufficient to pay such costs and expenses, all without Plaintiff becoming a mortgagee in possession or incurring any other liability to Defendant;

H.      That any such advances made by Plaintiff pursuant to the foregoing paragraph G of this prayer be additional indebtedness which is owed to Plaintiff under the Note and is secured by the Security Instruments and the other Loan Documents;

I.      That Plaintiff be permitted to commence and consummate, without further order of this Court, judicial and non-judicial foreclosure proceedings against all or any part of the Stores under and pursuant to the power of sale granted by Defendant to Plaintiff in the Security Instruments and that the receiver file a motion seeking its discharge immediately if and when the sale of all of the Stores has been consummated;

J.      That this Court tax all costs of this action to Defendant; and

US2008 16186830 6

K.   That this Court award such other and further relief as is just and proper.

Dated: New York, New York
     January 10, 2020

KILPATRICK TOWNSEND & STOCKTON LLP
Counsel for Plaintiff

By:___*/s/ Keith M. Brandofino*_____
Keith M. Brandofino, Esq. (KB-2128)
Maximiliano Rinaldi, Esq. (MR-7882)
David V. Mignardi, Esq. (DM-1123)
The Grace Building
1114 Avenue of the Americas, 21st Floor
New York, New York 10036
Tel: (212) 775-8700
Fax:(212) 775-8800
kbrandofino@kilpatricktownsend.com
mrinaldi@kilpatricktownsend.com
dmignardi@kilpatricktownsend.com

-15-

E

X

H

I

B

I

T

1

### Exhibit "A"
### [LEGAL DESCRIPTION]

#### Parcel 1

All that tract or parcel of land situate, lying and being in the City of Soperton, in the 1386th G.M. District of Treutlen County, Georgia, containing 1.34 acres, more or less, and being more particularly shown on that certain plat of survey prepared by Eddie A. Eubanks, Registered Surveyor, dated March 4, 2014, and recorded in Plat Book 8, Page 227, in the Office of the Clerk of the Superior Court of Treutlen County, Georgia, which plat and the record thereof is incorporated herein by reference and made a part of this description. Said tract is bounded, now or formerly, as follows: Northeast by the right-of-way of W. Main Street; Southeast by land of Green Higgs and by land of Royce W. Fowler, Jr.; Southwest by the right-of-way of W. Georgia Avenue; and Northwest by land of Colony Bank.

Being the same property conveyed to FirstChoice Property & Development, LLC by Warranty Deed from Royce W. Fowler, Jr. recorded on July 10, 2014 at Deed Book 144, Page 296 in the deed records of Treutlen County, Georgia.

#### Easement Parcel

A permanent easement benefitting the above described property for ingress and egress across an area containing two hundred and two (202) square feet, situated along the Southeast corner of the above-described tract, as shown on the above-described plat of survey.

E

X

H

I

B

I

T

2

## Exhibit "A"
[LEGAL DESCRIPTION]

Perry County, Mississippi
Township 4 North, Range 9 West

Section 6:

Commencing at a 1 ½" iron pipe at the NE Corner of the NW ¼ of said Section 6, thence South a distance of 221.52' to a point, thence West a distance of 506.00' to a found 1/2" iron pin (capped PLS#2945) located in the West R.O.W. of Mississippi State Highway 15, said iron pin also being located 545.23' South of the South curb line projected of Bay Avenue and 35.00' West of the physical centerline of said Highway 15, said iron pin being the Point of Beginning of the following described real estate, thence S 3°28'40" W along the said West R.O.W a distance of 509.54' to a found capped ½" iron pin in the North line of the C.M. Edwards Addition, thence S 89°59'34" W along said North line a distance of 124.25' to a found capped ½" iron pin, thence N 3°29'17" E a distance of 104.27' to a found capped ½" iron pin in the centerline of a creek, thence N 56°03'38" W along said centerline a distance of 23.23' to a found capped ½" iron pin, thence continuing along said centerline N 22°28'57" W a distance of 68.46' to a point on said centerline, thence leaving said centerline N 3°29'17" E a distance of 249.79' to a found ½" iron pin (uncapped), thence N 86°23'33" W a distance of 50.00' to a found capped ½" iron pin, thence N 3°30'36" E a distance of 92.62' to a found capped ½" iron pin, thence S 85°47'05" E a distance of 223.91' to the Point of Beginning and containing 2.01 acres of land.

52335130

439

**E**

**X**

**H**

**I**

**B**

**I**

**T**

**3**

## Exhibit "A"
[LEGAL DESCRIPTION]

Real property in the City of Haughton, Parish of Bossier, State of Louisiana, described as follows:

That certain tract of land situated in Sections 20 and 21, T18N, R11W, Bossier Parish, Louisiana, containing 2.578 acres, more or less, and being more fully described as follows:

From a set 1/2" diameter iron pipe at the east quarter corner of Section 20, run thence North 89°17'04" East (record) a distance of 21.03 feet (record/measure) South 89°29'56" East (measure) to a set ½" diameter iron pipe being on the West right of way line of Elm Street, thence run South 00°28'41" East (record) along said right of way a distance of 321.59 feet (record/measure) South 00°43'20" East (measure) to a set ½" diameter iron pipe being the Point of Beginning of the tract herein described. From said Point of Beginning, run South 00°28'41" East along the West right of way line of Elm Street a distance of 297.74 feet (record) South 00°43'20" West for a distance of 297.85 feet (measure) to a found ½" diameter iron pipe on the North right of way line of McKinley Avenue, thence run South 88°42'00" West along said right of way a distance of 242.58 feet (record) South 89°52'15" West for a distance of 242.56 feet (measure) to a found ½" diameter iron pipe, thence run North 00°34'09" West to a distance of 599.56 feet (record) North 00°36'07" West for a distance of 599.45 feet (measure) to a found 12" iron spike, thence run South 50°21'50" East a distance of 61.17 feet (record) South 49°24'16" East for a distance of 60.96 feet (measure) to a found ½" diameter iron pipe, thence run South 40°28'41" East a distance of 135.92 feet (record) South 39°19'51" East for a distance of 136.03 feet (measure) to a found ½" diameter iron pipe, thence run South 35°42'59" East a distance of 189.54 feet (record) South 34°32'45" East for a distance of 189.59 feet (measure) to the Point of Beginning, containing 112, 285 square feet or 2.578 acres, more or less.

52670763

E

X

H

I

B

I

T

4

confidential
Marcia Moore-Allan
Anderson McCoy & Orta
Aug 10, 2018 14:54

## Exhibit "A"
[LEGAL DESCRIPTION]

Real property in the City of Mansfield, Parish of DeSoto, State of Louisiana, described as follows:

A certain piece or portion of land, containing 2.007 acres, more or less, and being situated in Sections 9 & 16, Township 12 North, Range 13 West, DeSoto Parish, Louisiana, being more fully described as follows:

Commencing at the intersection of the West right of way line of Washington Street and the Old Corporation Limits for Mansfield, Louisiana; thence South 00°48'23" West (measure) (record South 00°48'15" West) for a distance of 248.16 feet (measure/record) to a found 1/2" iron pipe and the Point of Beginning of herein described tract;

Thence North 87°30' 43" West (measure) (record North 87°30'41" West) for a distance of 250.21 feet (measure) (record 250.08 feet) to a found X marked in concrete;

Thence North 00°49'58" East (measure) (record North 00°48'03" East) for a distance of 236.26 feet (measure) (record 237.26 feet) to a set 5/8" rebar with cap stamped Collins 4390;

Thence South 89°56'41" West (measure) (record South 89°56'35" West) for a distance of 24.84 feet (measure/record) to a found 1/2" iron pipe;

Thence North 00°55'03" East (measure) (record North 01°00'05" East) for a distance of 98.67 feet (measure/record) to a found 1/2" iron pipe;

Thence South 89°49'28" East (measure) (record South 89°49'31" East) for a distance of 274.66 feet (measure) (record 274.50 feet) to a ½" iron pipe found on the West right of way line of Washington Street;

Thence along the West right of way line of Washington Street South 00°48'23" West (measure) (record South 00°48'15" West) for a distance of 344.92 feet (measure) (record 345.92 feet) to the Point of Beginning.

E

X

H

I

B

I

T

5

## Exhibit "A"
## [LEGAL DESCRIPTION]

A certain tract or parcel of land situated in Land District North of Red River, Section 34, Township 20 North, Range 4 East, Sterlington, Ouachita Parish, Louisiana, and being more particularly described as follows, to-wit:

Commencing at the Southwest corner of Section 43, Township 20 North, Range 4 East, Ouachita Parish, Louisiana, as shown on plat of survey by W. H. Griffith, R.L.S. (deceased) showing Division Line between the Columbian Carbon Company and J. B. Johnston, Jr., according to George Selman's 1901 Survey of Ellersly Plantation recorded in Conveyance Book 665, Page 540, of the records of Ouachita Parish, Louisiana, proceed N 63°05'30"E along the Southerly line of said Section 43, a distance of 6256.31 feet to a point on the Southerly right-of-way line of Louisiana Highway 2 (80' R.O.W.); thence proceed S73°51'33"E along the Southerly right of way line of Louisiana Highway 2, a distance of 162.78 feet to a point; thence proceed N16°08'30"E along the Southerly right-of-way line of Louisiana Highway 2, a distance of 10.00 feet to a point; thence proceed in a Southerly direction along the Southerly right-of-way line of Louisiana Highway 2 being a non-tangent curve to the right having a radius of 272.94 feet (Chord bearing of S53°38'30"E and a chord distance of 188.64 feet) an arc distance of 192.61 feet to a point; thence proceed S56°34'30"W along the southerly right-of-way line of Louisiana Highway 2, a distance of 10.16 feet to a point of the Westerly right-of-way line of Louisiana Highway 2; thence proceed S33°30'41"E along the Westerly right of way line of Louisiana, Highway 2, a distance of 305.86 feet to a set 5/8 inch rebar for the Point Of Beginning; thence continue S33°30'41"E along the Westerly right-of-way line of Louisiana Highway 2, a distance of 230.00 feet to a set 5/8 inch rebar; thence proceed S61°22'41"W, a distance of 350.00 feet to a set 5/8 inch rebar; thence proceed N33°30'41"W parallel to the Westerly right-of-way line of Louisiana Highway 2, a distance of 230.00 feet to a set 5/8 inch rebar; thence proceed N61°22'41"E, a distance of 350.00 feet to the Point Of Beginning.

E

X

H

I

B

I

T

6

## Exhibit "A"
[LEGAL DESCRIPTION]

### Tract I

A certain tract of land situated in the SW 1/4 of Section 30, T23N-R7W, Haynesville, Claiborne Parish, Louisiana, containing 3.02 acres, more or less, and being more particularly described as follows:

Commencing at the Northwest corner of the NW 1/4 of said SW 1/4, thence S 00°22'16" W 57.00 feet; thence N 87° 41'18" E 879.00 feet; thence S 01°27'23" W 667.73 feet to a 5/8-inch rebar for the POINT OF BEGINNING; thence S 66° 29'03" E 338.68 feet to a chiseled "X" in concrete; thence S 01°27'23" W 419.00 feet to the centerline of Louisiana State Highway No. US-79 (passing through a 5/8-inch rebar on the North right of way line of said highway at 373.00 feet along said course); thence N 66° 29'03" W along said highway centerline 338.68 feet; thence leaving said highway centerline N 01° 27'23" E 419.00 feet to the POINT OF BEGINNING (passing through a 5/8-inch rebar on the North right of way line of said highway at 42.61 feet along said course)

### Tract II

A certain tract of land situated in the SW 1/4 of Section 30, T23N-R7W, Haynesville, Claiborne Parish, Louisiana, containing 0.482 acres (20,983 square feet), more or less and being more particularly described as follows:

Commencing at the Northwest corner of the NW 1/4 of said SW 1/4, thence S 00°22'16" W 57.00 feet; thence N 87°41'18" E 879.00 feet; thence S 01°27'23" W 667.73 feet to a 5/8-inch rebar for the point of beginning, said point also being the Northwest corner of a 3.02 acre tract described in the Act of Cash Sale and Establishment of Servitude recorded on May 9, 2012, in Conveyance Book 1606, page 200, Entry No. 445930, records of Claiborne Parish, Louisiana; thence N 00°05'40" E 57.17 feet to a 5/8-inch rebar; thence S 65°30'48" E 357.47 feet to a 1/2" rebar; thence S 02°39'13" W 465.23 feet to the centerline of Louisiana State Highway No. US-79 (passing through a 1/2 inch rebar on the North right of way line of said highway at 417.84 feet along said course); thence N 66°29'03" W along said highway centerline 4.33 feet to the Southeast corner of said 3.02 acre tract; thence leaving said highway centerline N 01°27'23" E 419.00 feet to a chiseled "X" in concrete at the Northeast corner of said 3.02 acre tract (passing through a 5/8-inch rebar on the North right of way line of said highway at 46.00 feet along said course); thence N 66°29'03" W 338.68 feet to the point of beginning.

461465

E

X

H

I

B

I

T

7

## Exhibit "A"
[LEGAL DESCRIPTION]

Real property in the Town of Ringgold, Parish of Bienville, State of Louisiana, described as follows:

Beginning at the Northeast corner of S.L. Manning Lot, running South 70 yards (measure South 00°21'21" West for a distance of 210.00 feet), thence East 70 yards (record), (measure South 87°32'55" East for a distance of 209.87 feet), thence North 70 yards (record), (measure North 00°21'21" East for a distance of 210.00 feet), thence West 70 yards (record), (measure North 87°32'55" West for a distance of 209.87 feet) to place of beginning, said land being bound Southwest by J.M. Hill Lot, on East by Dr. W. B. Albums Lot, now owned by A. W. Lawson, and on North by Ringgold and Sparta Road, containing 44,044 square feet or 1.011 acres, more or less.

Also being known as lot or parcel No. 28 of the Town of Ringgold, Bienville Parish, Louisiana, in accordance with map and survey of said town, made by Jas. A. Lupe, C.E. dated August 10, 1928, the original map and survey being on file and of record in the Conveyance Records of Bienville Parish, Louisiana.

52350868

E

X

H

I

B

I

T

8

## Exhibit "A"
### [LEGAL DESCRIPTION]

BOOK 2016 PAGE 829

### Tract 1: (Fee Simple Tract)

A part of the Southeast Quarter (SE¼) of the Northwest Quarter (NW¼), Section Three (3), Township Three (3) North, Range Two (2) West, and being more particularly described as follows: Beginning at the Southwest corner of said SE¼ and NW¼, Section 3, thence North 0°03'54" East 300.66 feet along the West line of said SE¼ and NW¼ to the Northwest corner of property recorded in Deed Book 136 at Page 33 and the Southwest corner of property recorded in Deed Book 101 at Page 532 of the records of Monroe County, Arkansas; thence South 89°40'32" East 796.2 feet along the North line of said property in Deed Book 136 at Page 33 and the South line of said property in Deed Book 101 at Page 532 to a point on the West right of way line of Charlyne Street (aka Old Highway 17); thence South 15°07'44" West 100.0 feet along said West right of way line to a point, Said point also being the Northeast corner of property recorded in Deed Book 80 at Page 166; thence North 89°39'35" West 416.0 feet along the North line of said property in Deed Book 80 at Page 166 to the Northwest corner thereof; thence South 15°07'44" West 208.0 feet along West line of said property in Deed Book 80 at Page 166 to a point on the South line of said SE¼, NW¼, Section 3; thence South 89°41'45" West 273.2 feet along said South line to the Point of Beginning and containing approximately 3.07 acres.

### Less and Except

Part of the Southeast Quarter (SE¼) of the Southwest Quarter (SW¼), Section Three (3), Township Three (3) North, Range Two (2) West, Monroe County, Arkansas and being more particularly described as follows:

Commencing at the Southwest corner of said SE¼ NW¼, Section 3; thence North 00°03'54" East 300.66 feet - measured (North 327.0 feet recorded) along the West line of said SE¼ NW¼ to the Northwest corner of property recorded in Deed Book 136 at Page 33 and Southwest corner of property recorded in Deed Book 101 at Page 532 of the records of Monroe County, Arkansas; thence South 89°40'32"measured (East recorded) 332.73 feet along the North line of said property in Deed Book 136 at Page 33 and the South line of said property in Deed Book 101 at Page 532 to the point of beginning; thence from the point of beginning continue South 89°40'32" East 436.47 feet along the North line of said property in Deed Book 136 at Page 33 and the South line of said property in Deed Book 101 at Page 532 to a point on the West right of way line Charlyne Street (aka Old Highway 17); thence South 15°07'44" West 100.0 feet along said West right of way line to a point, Said point also being the Northeast corner of property recorded in Deed Book 80 at Page 166; thence North 89°39'35" West 416.0 feet along the North line of said property in Deed Book 80 at Page 166 to the Northwest corner thereof; thence North 15°07'44" East 19.86 feet to a point; thence North 00°16'23" East 77.35 feet to the Point of Beginning.

52392328

BOOK 2016 PAGE 830

**Tract 2 (Sign Easement Tract- for Purpose of Insuring Sign Easement property as set forth in Sign Easement Agreement between FirstChoice Property & Development, LLC and Davis, Hull & Rowden, LLC, filed in Miscellaneous Book 2014 at Page 41, records of Monroe County, Arkansas.)**

Part of the Southeast Quarter (SE¼) of the Southwest Quarter (SW¼), Section Three (3), Township Three (3) North, Range Two (2) West, Monroe County, Arkansas and being more particularly described as follows:

Commencing at the Southwest corner of said SE¼ NW¼, Section 3; thence North 00°03'54" East 300.66 feet - measured (North 327.0 feet recorded) along the West line of said SE¼ NW¼ to the Northwest corner of property recorded in Deed Book 136 at Page 33 and Southwest corner of property recorded in Deed Book 101 at Page 532 of the records of Monroe County, Arkansas; thence South 89°40'32" -measured (East recorded) 332.73 feet along the North line of said property in Deed Book 136 at Page 33 and the South line of said property in Deed Book 101 at Page 532 to the point of beginning; thence from the point of beginning continue South 89°40'32" East 436.47 feet along the North line of said property in Deed Book 136 at Page 33 and the South line of said property in Deed Book 101 at Page 532 to a point on the West right of way line Charlyne Street (aka Old Highway 17); thence South 15°07'44" West 100.0 feet along said West right of way line to a point, Said point also being the Northeast corner of property recorded in Deed Book 80 at Page 166; thence North 89°39'35" West 416.0 feet along the North line of said property in Deed Book 80 at Page 166 to the Northwest corner thereof; thence North 15°07'44" East 19.86 feet to a point; thence North 00°16'23" East 77.35 feet to the Point of Beginning.

2